1                                                                                                    **O**

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              CENTRAL DISTRICT OF CALIFORNIA

10

11    EXOTO INC.,                                    Case No.:  2:21-cv-03754-MEMF-JEMx

12                              Plaintiff,            **ORDER GRANTING IN PART AND**
                                                      **DENYING IN PART MOTION FOR**
13               v.                                   **SUMMARY JUDGMENT [ECF NO. 45]**

14

15    SUNRICH COMPANY, LLC, et al.,

16                              Defendants.

17

18

19

20           Before the Court is the Motion for Summary Judgment filed by Defendants Sunrich

21    Company, LLC, Glen Chou, and Cindy Chou. ECF No. 45. For the reasons stated herein, the Court

22    hereby GRANTS in part and DENIES in part the Motion for Summary Judgment.

23

24

25

26

27    / / /

28    / / /

I.   **Background**

    A.  **Factual Background**[1]

Plaintiff Exoto Inc. ("Exoto") manufactures and sells race car scale models for hobbyists. Defendant Sunrich Company, LLC ("Sunrich") also sells race car scale models for hobbyists, although it designs them and commissions others to manufacture the race scar scale models it sells. Defendants Glen and Cindy Chou are co-owners of Sunrich and the president and vice president of the company, respectively.[2] This dispute concerns whether or not the Sunrich Defendants have taken the tooling used to produce Exoto's race car scale models and thereby counterfeited Exoto's race car scale models.

    B.  **Procedural History**

On May 3, 2021, Exoto filed a complaint against the Sunrich Defendants, alleging sixteen causes of action: (1) conversion; (2) unjust enrichment; (3) trademark counterfeiting and infringement under Lanham Act § 32(a) and 15 U.S.C. § 1114; (4) trademark dilution; (5) false designation of origin under Lanham Act § 43(a) and 15 U.S.C. § 1125(a); (6) unfair competition under Lanham Act § 43(a) and 15 U.S.C. § 1125(a); (7) unfair business practices under CAL. BUS. & PROF. CODE § 17200; (8) trade dress infringement; (9) common law trademark infringement; (10) common law unfair competition; (11) intentional interference with contractual relations; (12) intentional interference with prospective economic advantage; (13) negligent interference with prospective economic advantage; (14) negligence; (15) injunctive relief under CAL. BUS. & PROF. CODE § 17200; and (16) declaratory relief. *See generally* Compl.

Exoto has stipulated that it is not going to pursue a claim for relief or as part of its claims for relief the Sunrich Defendants' alleged use of Exoto trademarks or the Sunrich Defendants' alleged use of Exoto packaging. ECF No. 45-1 ("Sunrich SUF") ¶ 2. The ninth cause of action—common law

---

[1] Unless otherwise indicated, the following factual background is derived from the Complaint. Complaint, ECF No. 1 ("Complaint" or "Compl.").

[2] Defendants Sunrich, Glen Chou, and Cindy Chou will be referred to collectively as the "Sunrich Defendants." Exoto's Complaint also names as defendants: Truescale, Truescale Miniatures, Truescale Miniatures Limited, TSM Model Scale Miniatures, and Top Speed Model. *See generally* Compl. According to the parties' Joint Case Management Statement, submitted on March 1, 2022, these named defendants are trade names used by Sunrich. ECF No. 33 at 2.

1    trademark infringement—is therefore no longer at issue, nor the claim of trademark infringement as

2    part of the other causes of action (causes of action 3–7, 8, 10). *Id.*

3          On July 28, 2022, the Sunrich Defendants filed the instant Motion for Summary Judgment.

4    ECF No. 45 ("Motion" or "Mot."). The Motion was fully briefed on August 18, 2022. ECF Nos. 47

5    ("Opposition" or "Opp'n"), 56 ("Reply"). The parties also filed objections to declarations submitted

6    by the opposing party. ECF Nos. 54, 58, 59.[3] The Court held oral argument on this matter on

7    September 8, 2022.

8    **II.    Applicable Law**

9          **A.  Motion for Summary Judgment**

10         Summary judgment should be granted if "the movant shows that there is no genuine dispute

11   as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

12   56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists &*

13   *Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*,

14   477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could

15   return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

16         Under Rule 56(a), a court also has authority to grant *partial* summary judgment, or

17   "judgment on less than the entire case." 10B Charles Alan Wright & Arthur R. Miller, *Federal*

18   _____

19   [3] In moving for, or opposing, a summary judgment motion, "[a] party may object that the material cited to
     support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P.

20   56(c)(2). Exoto filed objections to the declarations of Duane Mathiowetz, Steven Young, and Robert Tyrrell
     submitted by the Sunrich Defendants in support of their Motion. ECF No. 54, 58, 59. After reviewing both

21   parties' arguments, the Court finds that the witness testimony and declarations objected to "can[] be presented
     in a form that would be admissible in evidence" at trial and OVERRULES the objections. *See* FED. R. CIV. P.

22   56(c)(2). While objections to evidence may be cognizable at trial, on a motion for summary judgment, the
     court is concerned only with the admissibility of the relevant facts at trial, and not the form of these facts as

23   presented in the motions. *See* FED. R. CIV. P. 56(c)(2) advisory committee's note to 2010 amendment
     ("Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be

24   presented in a form that would be admissible in evidence. The objection functions much as an objection at
     trial, adjusted for the pretrial setting."); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("At the

25   summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on
     the admissibility of its contents."); *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive

26   summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible
     at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56."); *Fonseca v.*

27   *Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (finding "declarations that . . . contain[ed]
     hearsay [were] admissible for summary judgment purposes because they could be presented in an admissible

28   form at trial" (internal quotation marks omitted)).

*Practice and Procedure* § 2737 (4th ed. 2022) (citing FED. R. CIV. P. 56(a)). Under Rule 56(g), a court that "does not grant all the relief requested by the motion . . . may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g).

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Nissan Fire*, 210 F.3d at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Liberty Lobby*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is no genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." FED. R. CIV. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 323.

**III.   Findings of Fact[4]**

The Court finds that the following material facts are established for trial under Federal Rules of Civil Procedure 56(a) and 56(g).

There are two primary methods of manufacturing scale models: die-casting and resin casting. Die-casting is a method of producing a model by forcing molten metal under high pressure into a mold cavity. *Id.* ¶ 11. The mold cavity is created using two hardened tool steel dies (called tooling), which have been machined into a particular shape. *Id.* Such models are made of metal, with plastic, rubber, glass, or other machined metal component parts, which are assembled after tooling to make

---

[4] The facts set forth below are taken from the parties' prepared Statements of Undisputed Facts. ECF Nos. 45-1 ("Sunrich SUF"); 47-1, at 2 ("Sunrich SUF Opp'n"); 47-1, at 34 ("Exoto SUF"); 56-1, at 39 ("Exoto SUF Opp'n"). To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion.

the model. *Id.* Resin casting, on the other hand, is a method of producing a model by filling a soft mold with a liquid synthetic resin, which then hardens. *Id.* ¶ 12.

Exoto manufactures and sells die-cast, 1:18 scale race car models. *Id.* ¶ 13. Sunrich is in the business of designing, commissioning the manufacture of, and selling die-cast and resin scale models, but does not itself manufacture the scale models. *Id.* ¶ 3. Glen Chou, the president and a co-owner of Sunrich, is solely responsible within Sunrich for deciding what models to have built. *Id.* ¶¶ 4, 5.[5] Cindy Chou, the vice president and a co-owner of Sunrich, is responsible for handling the financial aspects of Sunrich, *i.e.*, the accounting function, but plays no role in the design and development or sales of Sunrich products. *Id.* ¶¶ 6, 7.[6]

Exoto has identified twelve models of race cars that it contends were manufactured by the Sunrich Defendants using Exoto tooling: McLaren models MP4/6 F1, M8B, and M8D; Porsche models 935 and 936; Chaparral models 2D, 2E, and 2F; Aston Martin Vanquish; Lincoln Continental; and Ford models GT40 Mark II and Mark IV. *Id.* ¶ 15. The following chart summarizes Sunrich's commission, production, and sale of the respective models:

| Model | Sold by Sunrich |
|---|---|
| McLaren MP4/6 F1 | Yes, in 1:18 scale in molded resin. |
| McLaren M8B | No |
| McLaren M8D | Yes, in 1:18 scale in molded resin. |
| Porsche 935 | Yes, in 1:18 scale die-cast metal like Exoto. |
| Porsche 936 | Yes, in 1:18 scale die-cast metal. |
| Chaparral 2D | Yes, in 1:43 scale in molded resin, not die-cast metal like Exoto. |

---

[5] Exoto contends that the proposed fact in Sunrich SUF ¶ 5 is disputed, noting that "Glen Chou testified that he decides what cars to manufacture. Glen Chou did not testify that he decides what 'models to have built.'" Sunrich SUF Opp'n ¶ 5. The Court finds this distinction between deciding "what cars to manufacture" and "what models to have built" to be insignificant. As a result, the Court finds no genuine dispute here.

[6] Exoto contends that the proposed fact in Sunrich SUF ¶ 7 is disputed, noting that Cindy Chou testified that she is the vice president of Sunrich and that she has signed contracts on behalf of Sunrich. However, this testimony does not contradict the fact proposed by the Sunrich Defendants. As a result, the Court finds no genuine dispute here.

| Chaparral 2E | Yes, in 1:43 scale in molded resin, not die-cast metal like Exoto. |
|---|---|
| Chaparral 2F | Yes, in 1:43 scale in molded resin, not die-cast metal like Exoto. |
| Aston Martin Vanquish | No |
| Ford GT 40 Mark II | No, Sunrich only re-sold models purchased from Spark models. |
| Ford GT 40 Mark IV | No, Sunrich only re-sold models purchased from Spark models. |
| Lincoln Continental | No |

/ / /

/ / /

/ / /

1   *Id.* ¶¶ 21,[7] 23,[8] 24,[9] 26,[10] 31,[11] 32,[12] 34,[13] 35.

2

3

4

_____

5   [7] The Sunrich Defendants proposed the following fact: "Sunrich has sold the McLaren MP4/6 F1 in 1:18 scale in molded resin, not die-cast metal." Sunrich SUF ¶ 21. Exoto notes that the facts in Sunrich SUF ¶ 21 are neither disputed nor undisputed, asserting that it is "unable to respond as this information is unknown to [Exoto] and is in [the Sunrich] Defendants' control." Sunrich SUF Opp'n ¶ 21. Exoto's statement does not set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. As such, the Court adopts this fact as undisputed.

8   [8] The Sunrich Defendants proposed the following fact: "Sunrich has sold the McLaren M8D in 1:18 scale die-cast metal." Sunrich SUF ¶ 23. Exoto notes that the facts in Sunrich SUF ¶ 23 are neither disputed nor undisputed, asserting that it is "unable to respond as this information is unknown to [Exoto] and is in [the Sunrich] Defendants' control." Sunrich SUF Opp'n ¶ 23. Exoto's statement does not set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. As such, the Court adopts this fact as undisputed.

12   [9] The Sunrich Defendants proposed the following fact: "The McLaren M8D was manufactured for Sunrich by Deles International Ltd in Hong Kong in die-cast 1:18 scale using tooling that was originally used to manufacture a model of the M8D for Georgia Marketing Promotions, referred to as GMP. After Deles finished its production for GMP, the tooling was made available to Sunrich to produce the McLaren M8D under its brand." Sunrich SUF ¶ 24. Exoto notes that this fact is undisputed only as to Deles International Ltd. Potentially manufacturing the M8D, but otherwise contends that Sunrich reverse-engineered Exoto's tooling. Sunrich SUF Opp'n ¶ 24. The Court finds that whether or not Sunrich reverse-engineered Exoto's tooling is genuinely disputed. As a result, the Court has adjusted the proposed language to only include the undisputed facts.

16   [10] The Sunrich Defendants proposed the following fact: "Sunrich has commissioned and sold the Porsche 936 in 1:18 scale die-cast metal." Sunrich SUF ¶ 26. Exoto contends that the facts in Sunrich SUF ¶ 26 are disputed, arguing that Sunrich reverse-engineered Exoto's tooling. Sunrich SUF Opp'n ¶ 26. Although the Court finds that whether or not Sunrich reverse-engineered Exoto's tooling is genuinely disputed, this information offered by Exoto does not appear to contradict the information offered by the Sunrich Defendants.

20   [11] The Sunrich Defendants proposed the following fact: "Sunrich has sold the Porsche 935 in 1:18 scale die-cast metal. It was produced around 2008, and it was the first model produced for Sunrich." Sunrich SUF ¶ 31. Exoto notes that the facts in Sunrich SUF ¶ 31 are neither disputed nor undisputed, asserting that it is "unable to respond as this information is unknown to [Exoto] and is in [the Sunrich] Defendants' control." Sunrich SUF Opp'n ¶ 31. Exoto's statement does not set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. As such, the Court adopts this fact as undisputed.

23   [12] Exoto notes that the facts in Sunrich SUF ¶ 32 are neither disputed nor undisputed, asserting that it is "unable to respond as this information is unknown to [Exoto] and is in [the Sunrich] Defendants' control." Sunrich SUF Opp'n ¶ 32. Exoto's statement does not set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. As such, the Court adopts this fact as undisputed.

25   [13] The Sunrich Defendants proposed the following fact: "Sunrich has commissioned and sold the Chaparral 2D, 2E, and 2F in 1:43 scale in molded resin, not die-cast metal." Sunrich SUF ¶ 34. Exoto contends that this fact is disputed, arguing that "Sunrich took Exoto's tooling and converted the 1:18 scale molds into 1:43 scale through reverse engineering and did it in a resin model because it is cheaper." Sunrich SUF Opp'n ¶ 34. Although it appears that Exoto disputes whether the Chaparral 2D, 2E, and 2F models sold by Sunrich were manufactured by Minimax, Exoto's statement does not set out specific material facts showing a genuine issue for trial as to the fact that "Sunrich has commissioned and sold the Chaparral 2D, 2E, and 2F in 1:43 scale in molded resin, not die-cast metal." The Court therefore adopts this particular fact as undisputed.

1     Sunrich has not commissioned, produced, or sold models of the McLaren M8B, the Aston

2 Martin Vanquish, the Lincoln Continental, the Ford GT40 Mark II, or the Ford GT40 Mark IV. *Id.*

3 ¶¶ 16, 17.[14] It produced a 1:43 scale Ford GT race version of the same, but in molded resin, not die-

4 cast metal, that were sold in sets with the Ford GT Mark II and Mark IV, respectively, which were

5 purchased from MiniMax (aka Spark Models). *Id.* Sunrich commissions but typically does not

6 purchase the tooling that is used to manufacture its model cars. *Id.* ¶ 18.[15] Instead, Sunrich typically

7 tells the manufacturer what it wants to have made, provides information to the manufacturer that is

8 needed to produce the product, the manufacturer then produces and packages the product in its

9 factory, ships the packaged products to Sunrich, which sells them. *Id.* Sunrich pays for the tooling

10 used to make the models as part of the development costs charged by the manufacturer but does not

11 own the tooling, which stays with the manufacturer. *Id.* ¶ 19[16] (quoting G. Chou Dep. Tr. at 25:23–

12 26:9; 26:25–27:10). After the production run is completed, the tooling is normally left with the

13

14

15
_____

16 [14] Exoto notes that the facts in Sunrich SUF ¶ 16 are neither disputed nor undisputed, asserting that it is
"unable to respond as this information is unknown to [Exoto] and is in [the Sunrich] Defendants' control."
17 Sunrich SUF Opp'n ¶ 16. Exoto's statement does not set out specific material facts showing a genuine issue
for trial. *See Liberty Lobby*, 477 U.S. at 248–49. As such, the Court adopts this fact as undisputed. Exoto
18 contends that the facts in Sunrich SUF ¶ 17 are disputed, arguing that "[t]he tooling Sunrich used was Exoto's
tooling that was converted and modified. Sunrich took Exoto's tooling and converted the 1:18 scale molds
19 into 1:43 scale through reverse engineering and did it in a resin model because it is cheaper." However, the
additional information Exoto offers does not contradict the fact proposed by the Sunrich Defendants.
20 Moreover, Exoto's assertion that Sunrich used a converted and modified version of Exoto's tooling to
manufacture its models is disputed. The Court therefore finds that Sunrich Defendants' proposed facts are
21 undisputed.
[15] Exoto contends that the facts in Sunrich SUF ¶ 18 are disputed, arguing that Keusseyan "testified that
22 manufacturers develop the tools for companies who will actually produce the products. Once developed, all
tools are retained by the factory on consignment for the manufacturer because the tools are not easily
23 transportable to other locations, especially other countries. However, ownership remains with the
manufacturer, not the factory." Sunrich SUF Opp'n ¶ 18. The additional information Exoto offers does not
24 appear to contradict the fact proposed by the Sunrich Defendants. The Court therefore finds that Sunrich
Defendants' proposed facts are undisputed.
25 [16] Exoto contends that the facts in Sunrich SUF ¶ 19 are disputed, arguing that Keusseyan "testified that
manufacturers develop the tools for companies who will actually produce the products. Once developed, all
26 tools are retained by the factory on consignment for the manufacturer because the tools are not easily
transportable to other locations, especially other countries. However, ownership remains with the
27 manufacturer, not the factory." Sunrich SUF Opp'n ¶ 19. The additional information Exoto offers does not
appear to contradict the fact proposed by the Sunrich Defendants. The Court therefore finds that Sunrich
28 Defendants' proposed facts are undisputed.

1    factory. *Id.* ¶ 20.[17] The manufacturer then either gives the tooling to Sunrich or sells it for scrap. *Id.*

2    (quoting G. Chou Dep. Tr. at 27:14–28:6 (noting that a manufacturer's practice of selling tooling for

3    scrap was "very typical in our business. That's how people lose their toolings.")).

4           The five rights owners in this case are McLaren Group, Porsche AG, Jim Hall Racing

5    (Chaparral), Aston Martin Lagonda Global Holdings PLC, and Ford Motor Company. *Id.* ¶ 38.[18]

6    Sunrich did not commission or sell Lincoln Continental, Ford GT40 Mark II, or Mark IV models. *Id.*

7           Exoto filed its Complaint on May 3, 2021. Sunrich SUF ¶ 1. The Sunrich Defendants did not

8    plead the affirmative defense of Statute of Limitations in their Answer. Exoto SUF ¶ 76.

9    **IV.    Discussion**

10          The Sunrich Defendants contend that the Court should grant summary judgment as to

11   Exoto's claims for (1) conversion (Claim 1); (2) unjust enrichment (Claim 2); (3) trademark

12   counterfeiting and infringement under Lanham Act § 32(a) and 15 U.S.C. § 1114 (Claim 3); (4)

13   trademark dilution (Claim 4); (5) false designation of origin under Lanham Act § 43(a) and 15

14   U.S.C. § 1125(a) (Claim 5); (6) unfair competition under Lanham Act § 43(a) and 15 U.S.C. §

15   1125(a) (Claim 6); (7) unfair business practices under Cal. Bus. & Prof. Code § 17200 (Claim 7);

16   (8) trade dress (Claim 8); (9) common law unfair competition (Claim 10); (10) intentional

17   interference with contractual relations (Claim 11); (11) intentional interference with prospective

18   economic advantage (Claim 12); (12) negligent interference with prospective economic advantage

19   (Claim 13); (13) negligence (Claim 14); (14) injunctive relief under Cal. Bus. & Prof. Code §

20

21   _____

22   [17] Exoto contends that the facts in Sunrich SUF ¶ 20 are disputed, arguing that Keusseyan "testified that
     manufacturers develop the tools for companies who will actually produce the products. Once developed, all

23   tools are retained by the factory on consignment for the manufacturer because the tools are not easily
     transportable to other locations, especially other countries. However, ownership remains with the

24   manufacturer, not the factory." Sunrich SUF Opp'n ¶ 20. The additional information Exoto offers does not
     appear to contradict the fact proposed by the Sunrich Defendants. The Court therefore finds that Sunrich

25   Defendants' proposed facts are undisputed.
     [18] The Sunrich Defendants' SUF proposed the following fact: "The five *rights* owners in this case are

26   McLaren Group, Porsche AG, Jim Hall Racing (Chaparral), Aston Martin Lagonda Global Holdings PLC,
     and Ford Motor Company." Sunrich SUF ¶ 38. Exoto disputes this fact, arguing that these companies are the

27   owners of the brand name only, since they produced the original cars and do not produce miniatures. Sunrich
     SUF Opp'n ¶ 38. The Court finds that whether or not these companies are rights owners is reasonably

28   disputed. As a result, the Court has adjusted the proposed language to refer to these five companies as the
     "brand name" owners.

1  17200 (Claim 15); and (15) declaratory relief (Claim 16). In the case before us, Exoto has the

2  ultimate burden of persuasion at trial on each of its claims. In their Motion for Summary Judgment,

3  the Sunrich Defendants, as the moving parties, have the initial burden of production and ultimate

4  burden of persuasion.

5
6        **A.  Exoto has not created a genuine issue of material fact with respect to the alter
   ego liability of the Chous. (Claims 1–8, 10–16)**

7        The Sunrich Defendants contend that Exoto cannot demonstrate, based on admissible

8  evidence, that Glen and/or Cindy Chou are the alter egos of Sunrich. Mot. at 23–25. They note that

9  Exoto admitted in their responses to the Sunrich Defendants' request for production of documents

10  that they were not in possession of any documents that would support their alter ego allegations.

11  Mathiowetz Declaration ("Mathiowetz Decl."), ECF No. 45-17 ¶ 29; *see also* Exhibit I ("Pltf.

12  Response to Sunrich 1st Set RPFs"), ECF No. 45-11, Request Nos. 73–74. Moreover, the Sunrich

13  Defendants argue that Exoto sought no information—whether by interrogatory or documents by

14  written document requests—to Sunrich or the Chous pertaining to the factors to be considered by the

15  Court in evaluating alter ego; nor was any such information provided by the Sunrich Defendants.

16  Mathiowetz Decl. ¶ 30.

17        A corporate identity may be disregarded and the "corporate veil" pierced where "an abuse of

18  the corporate privilege justifies holding the equitable ownership of a corporation liable for the

19  actions of the corporation." *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Ct.

20  App. 2000). Under the alter ego doctrine, when the corporate form "is used to perpetuate a fraud,

21  circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will

22  ignore the corporate entity and deem the corporation's acts to be those of the persons or

23  organizations actually controlling the corporation." *Id.* Under California law, invocation of the alter

24  ego doctrine requires two conditions be met: (1) "there must be such a unity of interest and

25  ownership between the corporation and its equitable owner that the separate personalities of the

26  corporation and the shareholder do not in reality exist"; and (2) "there must be an inequitable result

27  if the acts in question are treated as those of the corporation alone." *Id.*

28

In determining whether to apply the doctrine, courts consider the commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Id.* (quoting *Roman Catholic Archbishop v. Superior Court*, 93 Cal. Rptr. 338, 342 (Ct. App. 1971). Courts also consider inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. *Id.* "Alter ego is an extreme remedy, sparingly used." *Id.*

The Sunrich Defendants have met their initial burden of production by demonstrating that there is an absence of evidence to support Exoto's alter ego claims against Glen and Cindy Chou. *Nissan Fire*, 210 F.3d at 1102. The burden therefore shifts to Exoto to demonstrate the existence of a genuine dispute of material fact. Exoto contends that Glen and Cindy Chou's status as officers of the various corporate defendants and their authority to sign documents on the companies' behalf gives rise to a presumption that they had the authority to control the defendant companies and that, therefore, they are the alter egos of the entity defendants. Opp'n at 24–25. In support of its assertion, Exoto notes Glen Chou's testimony that he is president of Sunrich, a member and shareholder of Sunrich, and "the decision maker." *Id.* at 25 (citing G. Chou Dep. Tr. at 9:1–10). Exoto also points to Cindy Chou's testimony that she is vice president, a member, and shareholder of Sunrich, and that she has signed contracts on behalf of Sunrich. *Id.* (citing ECF No. 45-4 at 10:5-9, 46:3–9).

However, if such evidence was sufficient to allow a court to invoke the alter ego doctrine, courts could pierce the corporate veil for virtually any officer or shareholder. On the contrary, as the California Court of Appeal has recognized, such a remedy is "extreme" and "sparingly used." *Sonora*, 99 Cal. Rptr. 2d at 836. There is no evidence in the record suggesting the existence of any of the factors (relevant to our case) considered by a court in determining whether to invoke the alter ego doctrine. There is no evidence of commingling of funds and assets, holding out by Sunrich or the Chous that they were liable for the debts of another, or that Sunrich may be a mere shell or conduit. Nor is there any evidence of inadequate capitalization, disregard of corporate formalities, or lack of segregation of corporate records. As a result, the Court finds that Exoto cannot demonstrate that a genuine dispute of material fact exists with respect to whether Glen and Cindy Chou are the

1  alter egos of Sunrich or any of the other corporate defendants. The Court therefore GRANTS the

2  Motion for Summary Judgment as to the issue of alter ego liability with respect to Glen and Cindy

3  Chou.

4  **B. Sunrich has waived any affirmative defense related to statute of limitations.**
      **(Claims 1–8, 10–14)**

5

6  The Sunrich Defendants contend that Exoto's claims related to conversion (Claims 2–3), the

7  Lanham Act (Claims 3–6), statutory unfair competition (Claim 7), trade dress (Claim 8), common

8  law unfair competition (Claim 10), and interference with contractual and business relations (Claims

9  11–14) are barred by applicable statutes of limitations. Mot. at 18–25. Exoto argues that its claims

10  are not barred because: (1) the Sunrich Defendants failed to raise statute of limitations as an

11  affirmative defense in their answer; (2) the Sunrich Defendants are estopped from asserting the

12  statute of limitations defense; and (3) the statute of limitations was tolled by the COVID-19

13  pandemic. Opp'n at 20–24.

14  Pleading that a plaintiff's claims are time-barred by a statute of limitations is an affirmative

15  defense under the Federal Rule of Civil Procedure 8(c). FED. R. CIV. P. 8(c). Federal Rule of Civil

16  Procedure 8(b) requires that a party responding to a pleading "state in short and plain terms its

17  defenses to each claim asserted against it." FED. R. CIV. P. 8(b). The Ninth Circuit has made clear

18  that the statute of limitations defense "must be raised by motion or responsive pleading, and unless

19  so raised is deemed waived." *Grabner v. Willys Motors, Inc.*, 282 F.2d 644, 646 (9th Cir. 1960). By

20  failing to raise the affirmative defense in their answer, the Sunrich Defendants waived it. The Court

21  therefore DENIES the motion for summary judgment as to the statute of limitations defense.[19]

22

23

24  / / /

25  / / /

26

27  _____

28  [19] Because the Court finds that the statute of limitations defense was waived, it need not consider Exoto's additional arguments that the Sunrich Defendants are estopped from asserting the statute of limitations defense or that the statute of limitations was tolled by the COVID-19 pandemic.

**C. Genuine issues of material fact remain with respect to Exoto's conversion claim, preventing this Court from granting summary judgment in the Sunrich Defendants' favor. (Claim 1)**

In its first cause of action, Exoto alleges that the Sunrich Defendants wrongfully converted Exoto's tooling, which Exoto used to create its race car scale models. The Sunrich Defendants seek summary judgment with respect to this cause of action on the ground that Exoto cannot prove the relevant elements of a claim of conversion, namely that Sunrich unlawfully converted or otherwise had access to Exoto's tooling created by Leasear Ltd. ("Leasear"). Mot. at 12. "Conversion is the wrongful exercise of dominion over the property of another." *Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015) (quoting *Welco Electronics, Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 882 (Ct. App. 2014)). A plaintiff asserting a claim for conversion must establish: (1) the plaintiff's ownership or right or possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* (quoting *Welco*, 166 Cal. Rptr. 3d at 882).[20]

For Sunrich to prevail on this claim at the summary judgment stage, it must show that there are no genuinely disputed issues of material fact with respect to this claim.

> i. A genuine issue of material fact remains with respect to the first
> element of conversion—Exoto's ownership of the tooling at issue.

The Sunrich Defendants contend that Exoto cannot prove that it possessed or had a right to possess the tooling during the relevant time period. Specifically, the Sunrich Defendants argue that Exoto never had a license to produce the McLaren MP4/6 F1, M8B, or M8D; Porsche 935 and 936; the Chaparral 2D, 2E, and 2F; the Aston Martin Vanquish; or the Lincoln Continental, the Ford GT40 Mark II, the Ford Mark IV. Mot. at 8–11. Moreover, the Sunrich Defendants argue that when asked to produce all relevant licenses, Exoto only produced two licenses—from Porsche and Ford—that failed to establish Exoto's right to produce the models during the operative period. *Id.* at 11; *see also* Mathiowetz Decl. ¶ 9; ECF No. 45-7 (Ford license agreement dated May 3, 2003); ECF No. 45-8 (Porsche license agreement dated May 27, 2004). In particular, the Sunrich Defendants' argument

---

[20] The Sunrich Defendants do not discuss damages in their Motion but assert that they contend that Exoto cannot prove damages.

is based on Exoto's failure to produce documents demonstrating any agreement with Leasear related
to the tooling for the models at issue. The Sunrich Defendants have therefore met their initial burden
of production to show the absence of evidence to support the first element of Exoto's conversion
claim—Exoto's ownership of the tooling at issue. The burden therefore shifts to Exoto to
demonstrate that there exists a genuine dispute of material fact.

Exoto contends that the tooling allegedly converted by the Sunrich Defendants was
specifically created for Exoto by Leasear. In support, Exoto produced a copy of a certification letter
from Leasear listing all of the molds that Exoto supplied for various model cars, including some of
the molds at issue. ECF No. 53-2 ("Leasear Certification Letter"). Specifically, the certification
letter lists the following relevant models: 1/18 Chaparral 2E and 1/18 Porsche 935. *Id.* Moreover,
Exoto produced documents showing that it had been invoiced for tooling for some identified models
from 2002–2008, including the 1/18 Porsche 936. Sunrich SUF ¶ 48; *see also* ECF No. 45-10
("Leasear Invoices"). However, it does not appear that Exoto has produced any documents
demonstrating that it had a right to possess tooling for the remaining models: McLaren models
MP4/6 FI, M8D, or Chaparral models 2D, 2F.[21] Instead, Exoto offers witness testimony to support
its assertion that it possessed tooling for these models, which had been subsequently stolen by the
Sunrich Defendants. Keusseyan Dep. Tr. 1 at 44:19–23 (testifying that Exoto had tooling for 1:18
scale models of the Chaparral 2D, 2E, and 2F); 82:21–83:4 (testifying that Sunrich had stolen the
tooling for the McLaren models MP4/6 FI and M8D).

As a result, evidence as to whether Exoto possessed or had a right to possess tooling for these
models exists in the form of the Leasear Certification Letter, Leasear Invoices, and witness
testimony. Exoto therefore met its burden of demonstrating the existence of a genuine dispute of a
material fact. Sufficient evidence exists such that a jury could possibly find that Exoto did, in fact,
possess or have a right to possess tooling for these models based on this evidence. As a result,
whether Exoto possessed or had a right to possess this tooling is a genuinely disputed fact
inappropriate for resolution at the summary judgment stage.

---

[21] The Leasear Certification Letter lists 1/18 Chaparral 2, but it is unclear whether this is the same model as
the Chaparral 2D, 2F, or a different model entirely. Leasear Certification Letter at 22.

ii.  <u>A genuine issue of material fact remains with respect to the second element of
conversion—whether Sunrich actually converted Exoto's tooling.</u>

The Sunrich Defendants contend that Exoto cannot prove that they unlawfully obtained or
had access to Exoto's tooling, which was created for Exoto by Leasear. Mot. at 12–15. They further
contend in the alternative that even if Exoto could prove conversion and violation of design rights, it
would be limited only to the Porsche 936 model. *Id.* at 15. Specifically, the Sunrich Defendants note
that Keusseyan never asked Leasear whether or not the Sunrich Defendants had acquired the Leasear
tooling, that Keusseyan's claims that the Sunrich Defendants had taken possession of Exoto's
tooling were based solely on inadmissible hearsay, that the Sunrich Defendants' expert witness could
only testify with respect to the Porsche 936 model, and that the Sunrich Defendants have
demonstrated that they paid for the tooling used in the manufacture of the Porsche 936 model. Mot.
at 12–15. The Sunrich Defendants have therefore met their initial burden of production. The burden
now shifts to Exoto to demonstrate the existence of a genuine dispute of a material fact.

In support of its conversion claims, Exoto presents the following evidence: (1) expert
testimony regarding a comparison between Sunrich and Exoto's Porsche 936 models; and (2)
testimony by Keusseyan that he was told by a former employee of another model manufacturer that
Glen Chou told the former employee and/or other unnamed engineers employed by the manufacturer
that Sunrich had "taken possession" of Exoto's tooling. Sunrich SUF ¶¶ 51; Exoto SUF ¶¶ 81–83,
87–88.

John Sinisi ("Sinisi"), Exoto's expert, testified that Sunrich's Master Pattern for the Porsche
936 Product Line shows specific details that are not on the Sunrich model but are, in fact, on the
Exoto Model and the Exoto Master Pattern. Exoto SUF ¶ 81. According to Sinisi, the Sunrich
package produced in discovery for the Porsche 936 Product Line lacks the level of reference material
needed to make accurate interior, engine, and chassis details. *Id.* ¶ 82. The Sunrich Defendants have
not provided any undercarriage reference material or documentation to Exoto. *Id.* ¶ 83. Nor have the
Sunrich Defendants provided any images of the bottom of their Porsche 936 model to capture any
bottom details. *Id.* ¶ 86. Nor have the Sunrich Defendants provided any field sketches or detailed
dimensions to use for scaling any components or as carving reference stations, nor any scale CAD

drawings and scale engineering drawings for prototyping, assembly, or mold planning of any kind. *Id.* ¶¶ 87–88. Despite the invoices submitted by the Sunrich Defendants as evidence that they paid for the Porsche 936 tooling, the Court finds that Sinisi's testimony is sufficient to indicate that whether the Sunrich Defendants converted Exoto's Porsche 936 tooling is a genuinely disputed material fact. Because Sinisi only specifically evaluated the Porsche 936 model, his testimony is limited only to the issue of conversion as to this model.

With respect to the remaining models—McLaren models MP4/6 F1, M8D; Porsche model 935; and Chaparral models 2D, 2E, and 2F—Keusseyan's deposition testimony is central. During his deposition, Keusseyan relayed comments purportedly made by Glen Chou to third parties—namely, that Sunrich had taken possession of Exoto's tooling. The Sunrich Defendants contend that such testimony is inadmissible hearsay and cannot be considered by the Court. However, the Court has overruled this objection. *See supra* n.3. The Court finds that Keusseyan's testimony that a third party told him that Glen Chou admitted to "tak[ing] possession" of Exoto's tooling creates a genuinely disputed fact as to whether the Sunrich Defendants converted Exoto's tooling for the models at issue, including and in addition to the Porsche 936 model.

The Court therefore DENIES the Motion for Summary Judgment as to conversion.[22]

**D. Genuine issues of material fact exist with respect to Exoto's claim of infringement of its trade dress. (Claims 3–7, 8, 10)[23]**

The Lanham Act provides protection for a trade dress, which has been defined as the "total image of a product," including features such as size, shape, color, texture, and graphics. *Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126–27 (9th Cir. 2016) (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001); quoting *Disc Golf Ass'n v. Champion Discs, Inc.*, 158

---

[22] The Sunrich Defendants note in a footnote that they further contend that Exoto cannot prove damages to the extent claimed but notes that "damages will not be addressed herein." Mot. at 12 n.4. On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex Corp.*, 477 U.S. at 323. The Sunrich Defendants have failed to meet their burden of demonstrating the absence of a genuine issue of material fact for trial and, as a result, declines to grant summary judgment on this basis.

[23] The parties, during the hearing on the matter, clarified that although they previously stipulated not to pursue claims involving trade dress with respect to Exoto's Styrofoam packaging, Claims 3–7 and 10 are fundamentally pleaded as trade dress claims and therefore remain live issues. *See also* Sunrich SUF ¶ 2.

F.3d 1002, 1005 n.3 (9th Cir. 1998)). To establish standing under the Lanham Act, a plaintiff need

not have ownership of a trademark, but need have only a "commercial interest" in the mark. *Waits v.*

*Frito-Lay, Inc.*, 978 F.2d 1093, 1109–10 (9th Cir. 1992), *rev'd on other grounds*, *Lexmark Intern.,*

*Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134–37 (2014). This standing requirement

applies to trade dress infringement claims as well.[24]

The Sunrich Defendants contend that Exoto does not have design rights for the models at

issue and therefore lacks standing to assert its claims related to trade dress infringement (causes of

action 3–7, 10). Mot. at 8–12; Reply at 6–7. They assert that the car manufacturers for the models at

issue own the rights of the designs, Exoto did not possess any license to replicate the designs of the

models at issue in this case, and Exoto therefore cannot assert its trade dress infringement claims.

Mot. at 8–12. Specifically, the Sunrich Defendants argue, as before, that Exoto never had a license to

produce the McLaren MP4/6 F1, M8B, or M8D; Porsche 935 and 936; the Chaparral 2D, 2E, and

2F; the Aston Martin Vanquish; or the Lincoln Continental, the Ford GT40 Mark II, the Ford Mark

IV. Mot. at 8–11. Moreover, the Sunrich Defendants argue that when asked to produce all relevant

licenses, Exoto only produced two licenses—from Porsche and Ford—that failed to establish

Exoto's right to produce the models during the operative period. *Id.* at 11; *see also* Mathiowetz Decl.

¶ 9; ECF No. 45-7 (Ford license agreement dated May 3, 2003); ECF No. 45-8 (Porsche license

agreement dated May 27, 2004). The Sunrich Defendants have met their initial burden of production

to demonstrate the absence of evidence in support of Exoto's trade dress infringement claims. The

burden then shifts to Exoto to establish a genuine dispute of material fact.

Keusseyan testified during his deposition that Exoto had, was in the process of renewing, or

was in discussions for a license to be obtained upon introduction of the product to the market.

Keusseyan Dep. Tr. 1 at 25:9–13; 13:10–12 (describing Exoto's discussions with McLaren regarding

licensing to produce McLaren models); 39:12–25, 40:1–20 (describing "blanket" license agreement

with Porsche); 43:12–23 (noting that Exoto held a license from Chaparral, but being unable to recall

---

[24] *See Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1123 (W.D. Wash. 2007) ("Plaintiffs
have standing to sue for trade dress infringement regardless of whether they own or owned the trade dress
rights.").

1   period of time); 54:6–24 (testifying that Exoto had a license from Aston Martin to produce the

2   Vanquish); 55:9–25 (describing Exoto's general license agreement with the Premier Automotive

3   Group, which included licensing for Ford and Continental models). The Court finds that whether

4   Exoto, in fact, had licenses or Exoto's licensing discussions with manufacturers were sufficient to

5   give rise to a commercial interest in the trade dress are questions of fact that are genuinely in

6   dispute. After all, even if Exoto was unable to locate the appropriate licenses for production, a jury

7   may still find that Exoto nonetheless, based on testimony, possessed the licenses necessary to

8   establish standing to assert a trade dress claim.

9       This inquiry is inappropriate for resolution on a Motion for Summary Judgment. The Court

10   therefore DENIES the Motion for Summary Judgment as to Exoto's trade dress infringement claims.

### E.  Genuine issues of material fact remain with respect to Exoto's claims of interference and negligence. (Claims 11–14)

13       The Sunrich Defendants further contend that Exoto cannot possibly prove that the Sunrich

14   Defendants interfered with Exoto's business relationships with Tyrrell Promotions Ltd. ("Tyrrell

15   Promotions"), Chaparral, and Leasear, and therefore request that the Court grant summary judgment

16   as to Exoto's intentional interference with contract, interference with prospective economic

17   advantage, negligent interference with prospective business advantage, and negligence claims. Mot.

18   at 16–17 (discussing Claims 11–14).

19       i.   Genuine issues of material fact remain with respect to Exoto's claims of
20            intentional interference with contract and prospective economic advantage
21            concerning Leasear, but not Tyrrell Promotions and Chaparral.

22       Under California law, a claim for intentional interference with contract requires: (1) a valid

23   contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3)

24   defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach

25   or disruption caused by defendant's actions; and (5) resulting damage. *Family Home & Fin. Ctr.,*

26   *Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 825 (9th Cir. 2008). Claims for tortious

27

28

interference with prospective economic advantage have the same elements.[25] *Korea Supply Co.*, 63 P.3d at 950. The Sunrich Defendants contend that the Court should grant summary judgment as to Exoto's intentional interference with contract and intentional interference with prospective economic advantage claims because Exoto has failed to produce any documents proving the existence of valid contracts or prospective economic relationships between Exoto and all three third parties, evidence of the Sunrich Defendants' knowledge of such valid contracts or economic relationships, or any evidence that the Sunrich Defendants were responsible for the termination of Exoto's relationships with Tyrrell Promotions and Chaparral. The Court will discuss the claims with respect to each of these third parties separately.

1. *Exoto failed to demonstrate that genuine issues of material fact remain with respect to its claims concerning Tyrrell Promotions.*

The Sunrich Defendants assert that there are no genuine issues of material fact with respect to the causes of action relating to Tyrrell Promotions because Exoto has failed to produce any documents proving the existence of valid contracts or prospective economic relationships between Exoto and Tyrrell Promotions, evidence of the Sunrich Defendants' knowledge of such valid contracts or economic relationships, or any evidence that the Sunrich Defendants were responsible for the termination of Exoto's relationship with Tyrrell Promotions.

First, the Sunrich Defendants have met their initial burden of demonstrating the absence of evidence that a valid contract or economic relationship existed between Tyrrell Promotions and Exoto. *See Nissan Fire*, 210 F.3d at 1102 (noting that a moving party may carry its burden of production by showing that there is an absence of evidence to support the nonmoving party's case). The burden therefore shifts to Exoto to demonstrate a genuine dispute of material fact. The Court finds that evidence does exist suggesting that Exoto may have had a contract or economic

---

[25] The elements of the tort of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).

relationship with Tyrrell Promotions. During his deposition, Keusseyan testified that Exoto's relationship with Tyrrell Promotions began in 1997. Keusseyan Dep. Tr. 1 at 72:14–17. The Court therefore finds that a genuine dispute exists as to whether there was a valid contract or economic relationship between Tyrrell Promotions and Exoto.

Second, the Sunrich Defendants assert that Exoto has failed to produce any documents proving their knowledge of Exoto's economic relationships with Tyrrell Promotions. The Sunrich Defendants have met their initial burden of demonstrating the absence of evidence with respect to the Sunrich Defendants' knowledge. *See Nissan Fire*, 210 F.3d at 1102 (noting that a moving party may carry its burden of production by showing that there is an absence of evidence to support the nonmoving party's case).

The burden therefore shifts to Exoto to set forth specific facts demonstrating the existence of a genuine dispute of material fact. However, Exoto points to no evidence of the Sunrich Defendants' knowledge of Exoto's economic relationship with Tyrrell Promotions. In its Opposition, Exoto cites to Keusseyan's deposition testimony, noting that representatives of Tyrrell Promotions informed him that "another manufacturer was ready to produce the same model as that which was announced on Exoto's site but which Exoto could not produce" because the tooling had allegedly been stolen by the Sunrich Defendants. Opp'n at 19 (citing Keusseyan Dep. Tr. 66:10–18; 71:2; 72:14–17; 76:25; 77:1–20). However, this evidence is insufficient to establish or create a genuine dispute of fact with respect to the Sunrich Defendants' knowledge. Tyrrell Promotions's reference to "another manufacturer" could indicate action by any manufacturer, not just Sunrich. Even if this were a clear reference to Sunrich, nothing in this testimony suggests that the manufacturer in question—or Sunrich, for that matter—was aware of Tyrrell Promotions's economic relationship with Exoto.

Because Exoto has failed to meet its shifted burden of demonstrating the existence of a genuine dispute of material fact, the Court therefore GRANTS summary judgment as to Exoto's intentional interference with contract and interference with prospective economic advantage claims with respect to Tyrrell Promotions.

/ / /

2.   *Exoto failed to demonstrate that genuine issues of material fact remain with respect to its claims concerning Chaparral.*

With respect to Chaparral, the Sunrich Defendants similarly assert that Exoto has failed to produce any documents proving the existence of valid contracts or prospective economic relationships between Exoto and Chaparral, evidence of the Sunrich Defendants' knowledge of such valid contracts or economic relationships, or any evidence that the Sunrich Defendants were responsible for the termination of Exoto's relationship with Chaparral.

First, the Sunrich Defendants have met their initial burden of demonstrating the absence of evidence that a valid contract or economic relationship existed between Chaparral and Exoto. *See Nissan Fire*, 210 F.3d at 1102 (noting that a moving party may carry its burden of production by showing that there is an absence of evidence to support the nonmoving party's case). The burden therefore shifts to Exoto to demonstrate a genuine dispute of material fact. The Court finds that evidence *does* exist suggesting that Exoto may have had a contract or economic relationship with Chaparral. As discussed previously, Keusseyan testified that Exoto held a license from Chaparral. Keusseyan Dep. Tr. 1 at 43:12–23 (noting that Exoto held a license from Chaparral but being unable to recall period of time). Moreover, the Leasear Certification Letter listed the 1/18 Chaparral 2E and 1/18 Chaparral 2 as models for which Exoto supplied molds. Leasear Certification Letter at 16, 22. The Court therefore finds that a genuine dispute exists as to whether there was a valid contract or economic relationship between Chaparral and Exoto.

Second, the Sunrich Defendants assert that Exoto has failed to produce any documents proving their knowledge of Exoto's economic relationships with Chaparral. The Sunrich Defendants have met their initial burden of demonstrating the absence of evidence with respect to the Sunrich Defendants' knowledge. *See Nissan Fire*, 210 F.3d at 1102 (noting that a moving party may carry its burden of production by showing that there is an absence of evidence to support the nonmoving party's case).

The burden therefore shifts to Exoto to set forth specific facts demonstrating the existence of a genuine dispute of material fact. However, Exoto points to no evidence of the Sunrich Defendants' knowledge of Exoto's economic relationship with Chaparral. In its Opposition, Exoto cites to the

same portion of Keusseyan's deposition testimony that it cites to in support of its contentions
regarding the Sunrich Defendants' knowledge of Exoto's contractual relationship with Tyrrell
Promotions, noting that representatives of Chaparral informed Keusseyan that "another manufacturer
was ready to produce the same model as that which was announced on Exoto's site but which Exoto
could not produce" because the tooling had allegedly been stolen by the Sunrich Defendants. Opp'n
at 19 (citing Keusseyan Dep. Tr. 66:10–18; 71:2; 72:14–17; 76:25; 77:1–20). However, this
evidence is insufficient to establish or create a genuine dispute of fact with respect to the Sunrich
Defendants' knowledge. As discussed previously, Chaparral's reference to "another manufacturer"
could indicate action by any manufacturer, not just Sunrich. Even if this were a clear reference to
Sunrich, nothing in this testimony suggests that the manufacturer in question—or Sunrich, for that
matter—was aware of Chaparral's economic relationship with Exoto.

The Court therefore GRANTS summary judgment as to Exoto's intentional interference with
contract and interference with prospective economic advantage claims with respect to Chaparral.

> 3.   *Genuine issues of material fact remain with respect to Exoto's claims
> concerning Leasear.*

With respect to Leasear, the Sunrich Defendants assert that Exoto has failed to produce any
documents proving the existence of valid contracts or prospective economic relationships between
Exoto and Leasear, or any evidence of the Sunrich Defendants' knowledge of such valid contracts or
economic relationships. The Sunrich Defendants have met their initial burden of demonstrating the
absence of evidence with respect to the existence of an economic relationship between Exoto and
Leasear. *See Nissan Fire*, 210 F.3d at 1102 (noting that a moving party may carry its burden of
production by showing that there is an absence of evidence to support the nonmoving party's
case).The burden therefore shifts to Exoto to set forth specific facts demonstrating the existence of a
genuine dispute of material fact. The Court finds that evidence does exist suggesting that Exoto may
have had a contract or economic relationship with Leasear. As discussed previously, Exoto produced
a copy of the Leasear Certification Letter, which listed a number of models for which Exoto supplied
molds. *See generally* Leasear Certification Letter. The Court therefore finds that a genuine dispute
exists as to whether a valid contract or economic relationship existed between Leasear and Exoto.

With respect to the Sunrich Defendants' knowledge of Exoto and Leasear's economic relationship, the Sunrich Defendants have again met their initial burden of demonstrating the absence of evidence. *See Nissan Fire*, 210 F.3d at 1102 (noting that a moving party may carry its burden of production by showing that there is an absence of evidence to support the nonmoving party's case).The burden again shifts to Exoto. Keusseyan testified during his deposition that Glen Chou told third parties that Sunrich had obtained Exoto's tooling from Leasear—suggesting that Sunrich was well aware of Leasear's contract or economic relationship with Exoto. Keusseyan Dep. Tr. 1 at 66:10–18, 71:2, 72:14–17, 76:25–77:20. As such, whether the Sunrich Defendants intentionally interfered with Leasear and Exoto's contract or economic relationship is a genuinely disputed fact. The Court therefore DENIES summary judgment as to Exoto's intentional interference with contract and interference with prospective economic advantage claims with respect to Leasear.

ii. <u>Genuine issues of material fact remain with respect to Exoto's claims of negligent interference with its economic relationships concerning Leasear, but not Tyrrell Promotions and Chaparral.</u>

The elements of negligent interference with prospective economic advantage are: (1) the existence of a valid contractual relationship or other economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge (actual or construed) of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) resulting economic harm. *Nelson v. Tucker Ellis, LLP*, 262 Cal. Rptr. 3d 250, 264 n.5 (Ct. App. 2020). The Sunrich Defendants contend that Exoto has failed to produce any evidence of economic relationships between itself and Tyrrell Promotions, Chaparral, and Leasear and that Exoto itself was responsible for the termination of its relationships with Chaparral and Tyrrell Promotions. As discussed *supra* Sections III.E.i.1–3, the Court finds that evidence exists suggesting that Exoto may have had a contract or economic relationship with Tyrrell Promotions, Chaparral, and Leasear. *See supra* Sections III.E.i.1–3 (discussing evidence from Keusseyan's testimony and the Leasear Certification Letter). Additionally, a genuine dispute exists as to whether the Sunrich Defendants

interfered with Exoto's economic relationships with Leasear. *See supra* Section III.E.i.3. However, Exoto failed to meet its shifted burden of demonstrate the existence of a genuine dispute of material fact with respect to the Sunrich Defendants' knowledge element related to Tyrrell Promotions and Chaparral.

As a result, the Court DENIES summary judgment as to Exoto's negligent interference with prospective business advantage claim with respect to Leasear. The Court GRANTS summary judgment as to Exoto's negligent interference with prospective business advantage claim with respect to Tyrrell Promotions and Chaparral.

        iii.   <u>Genuine issues of material fact remain with respect to Exoto's negligence claim.</u>

The elements of a negligence claim are: (1) a legal duty to use due care; (2) breach of such legal duty; and (3) the breach as a proximate or legal cause of the resulting injury. The Sunrich Defendants contend that the Court should grant summary judgment on Exoto's negligence claim because Exoto has failed to produce admissible evidence of the Sunrich Defendants' knowledge that Exoto's tooling was manufactured by Leasear, nor any admissible evidence that the Sunrich Defendants unlawfully purchased and used the tooling for their own benefit. The Sunrich Defendants have met their initial burden of demonstrating the absence of evidence in support of Exoto's negligence claim. *See Nissan Fire*, 210 F.3d at 1102 (noting that a moving party may carry its burden of production by showing that there is an absence of evidence to support the nonmoving party's case). The burden then shifts to Exoto to demonstrate a genuine dispute of material fact.

As discussed previously, the Court found that expert witness Sinisi's testimony was sufficient to indicate that whether the Sunrich Defendants converted Exoto's tooling is a genuinely disputed fact as to the Porsche 936. *See supra* Section III.D.1.ii. Moreover, Keusseyan testified during his deposition that Glen Chou told third parties that Sunrich had obtained Exoto's tooling from Leasear—which, if true, would suggest that Sunrich was well aware that Leasear had manufactured Exoto's tooling. Keusseyan Dep. Tr. 1 at 66:10–18, 71:2, 72:14–17, 76:25–77:20. As a result, a genuine dispute of material fact exists as to whether the Sunrich Defendants knew that Exoto's tooling was manufactured by Leasear, or whether the Sunrich Defendants unlawfully

purchased and used the tooling for their own benefit. As a result, the Court DENIES the motion for summary judgment with respect to Exoto's negligence claim.

**V.**     **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion for Summary Judgment as to the issue of alter ego liability is GRANTED;

2. The Motion for Summary Judgment as to statute of limitations is DENIED;

3. The Motion for Summary Judgment as to Exoto's conversion claim (Claim 1) is DENIED;

4. The Motion for Summary Judgment as to Exoto's trade dress infringement claims (Claims 3–7, 8, 10) is DENIED;

5. The Motion for Summary Judgment as to Exoto's intentional interference with contract and prospective economic advantage claims (Claims 11–12) is DENIED as to Leasear but GRANTED as to Tyrrell Promotions and Chaparral;

6. The Motion for Summary Judgment as to Exoto's negligent interference with economic relationship claims (Claims 13) is DENIED as to Leasear but GRANTED as to Tyrrell Promotions and Chaparral; and

7. The Motion for Summary Judgment as to Exoto's negligence claim (Claim 14) is DENIED.

IT IS SO ORDERED.



Dated: November 22, 2022          _____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge